31 Cal.Rptr. 350]

[Civ. No. 206.   Fifth Dist.   June 6, 1963.]

EARL MARVIN PRICE, Plaintiff and Respondent, v. CECELIA WILDERS PRICE, Defendant and Appellant.

Mack, Bianco, King & Eyherabide, Dominic Bianco and Stephen Eyherabide for Defendant and Appellant.

Thomas H. Werdel for Plaintiff and Respondent.

BROWN (R.M.), J.—Appellant Cecelia Wilders Price, defendant and cross-complainant below, and respondent Earl Marvin Price, plaintiff and cross-defendant below, were granted interlocutory decrees of divorce each against the other on the ground of extreme cruelty. The trial court determined the character of various items of property, awarded defendant alimony, directed plaintiff to pay $1,000 attorneys' fees and to pay community debts, and ordered each spouse to bear his or her own costs of suit. Defendant has appealed from the entire decree but makes only two assignments of error: (1) that the trial court erred in finding that a business is the separate property of plaintiff, and (2) that the trial court abused its discretion in denying her costs of suit.

### Property Rights

The parties were married on January 2, 1936, and separated on May 9, 1960. At the time of marriage defendant owned no property. Plaintiff was the sole owner of a business known as Earl M. Price and Company, had approximately $107 in a bank account, and was receiving monthly Army disability retirement benefits. On January 25, 1936, his father died and plaintiff inherited personal property of the value of $8,514.

Throughout the entire period of the marriage plaintiff devoted his time and energy to the business. Defendant was not gainfully employed and had no salary. All income during marriage was derived from the business, plaintiff's inheritance, and his retirement benefits. This income was deposited in banks in commercial accounts, which plaintiff testified were "business" accounts. At the time of trial only one business account was maintained and for the purpose of this decision we shall refer to the account in the singular, as did counsel in briefs.

There was evidence that, at the time of marriage the cost value of the business was at least $18,707, and at the time of

trial its cost value was at least $118,289. Plaintiff's military retirement benefits during the total period of marriage were $51,292. At the time of marriage the business was operated in rented premises. In 1937 an unimproved lot upon which the business is now located was purchased for $3,750, and title was taken in plaintiff's name alone. In 1951 a construction loan of $25,000 was obtained from the Bank of America for the purpose of constructing the business buildings, and construction was completed in early 1952. Both plaintiff and defendant signed the note evidencing the loan.

The trial court found that the business, comprised of both real and personal property, is the separate property of plaintiff; that the total value of the business at the time of trial was less than the separate investments of plaintiff, together with reasonable interest allowances on such investments, and that there was never an excess of community income attributable to the time and energy of plaintiff over community living expenses.

■ If a finding of fact is based upon any substantial evidence in the record, whether it be direct or indirect, contradicted or uncontradicted, it is binding upon a reviewing court (*Estate of Arstein,* 56 Cal.2d 239, 240 [14 Cal.Rptr. 809, 364 P.2d 33]; *Primm* v. *Primm,* 46 Cal.2d 690, 693 [299 P.2d 231]; *Hicks* v. *Hicks,* 211 Cal.App.2d 144, 149 [27 Cal. Rptr. 307]). ■ The presumption set out in section 164 of the Civil Code that property acquired after marriage is community may be overcome by a preponderance of evidence to the contrary (*Kenney* v. *Kenney,* 128 Cal.App.2d 128, 134 [274 P.2d 951]); the burden of proof is on the spouse claiming that the property is, in fact, separate (*Falk* v. *Falk,* 48 Cal.App.2d 762, 767 [120 P.2d 714]); it is for the trial court to determine whether the burden has been sustained, and its finding thereon will not be disturbed on appeal unless the rebuttal evidence is so weak and improbable that it does not furnish any substantial support (*Estate of Trelut,* 26 Cal. App.2d 717, 723 [80 P.2d 147]).

■ In this case, the trial court applied the rule that where the husband devotes his time and energy to his separate property business, the separate property is given a fair return on the investment, and any money in excess thereof is deemed attributable to the husband's skill and effort and is allocated to the community (*Pereira* v. *Pereira,* 156 Cal. 1, 7 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A. N.S. 880]). (See *Estate of Arstein,* 56 Cal.2d 239, 241 [14 Cal.Rptr. 809, 364 P.2d

33] ; *Margolis* v. *Margolis,* 115 Cal.App.2d 131, 135 [251 P.2d 396].)

Concededly, the value of the business which plaintiff brought to the marriage, i.e., $18,707, is his separate property, as is the inheritance of $8,514 (Civ. Code, § 163) and the sum of $51,292.12 army retirement benefits for premarital services and disability *(Estate of Ney,* 212 Cal.App.2d 891, 895 [28 Cal.Rptr. 442] ; *Thomasset* v. *Thomasset,* 122 Cal. App.2d 116, 128 [264 P.2d 626] ; *Gettman* v. *City of Los Angeles Dept. of Water & Power,* 87 Cal.App.2d 862 [197 P.2d 817]).

Plaintiff's testimony and detailed schedules prepared by him and introduced in evidence show simple interest at 7 per cent from the date of each separate investment amounts to $33,391.74 as to the business, $11,916.60 as to the inheritance, and $43,780.88 as to the retirement benefits for a total of separate capital investment plus interest of $167,602.13. He testified that the cost value of the business at time of trial was $118,228.64. Thus, the court was justified in finding that the plaintiff's separate property investments plus simple interest at the legal rate exceeded the value of the business at time of trial and no part of the business was allocable to the community.

Defendant contends there was no evidence to establish that 7 per cent is a reasonable rate of interest to be allowed plaintiff on his separate capital investments. The rate of 7 per cent has been recognized as ''usual interest on a long investment well secured'' unless the husband introduces ''evidence to show that the capital invested was entitled to a greater return than legal interest'' or the wife introduces evidence to prove that ''it earned a smaller proportion of the profits than legal interest.'' *(Pereira* v. *Pereira,* 156 Cal. 1 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A. N.S. 880] (modification, pp. 11-12).) In the instant case defendant made no objection to the 7 per cent rate presented by plaintiff for the court's consideration, stipulated that plaintiff's schedules based on that interest rate be received as evidence, and offered no proof as to any different rate. There was therefore no error in this respect.

Defendant points out that the community earnings of the husband and his separate funds received after marriage were deposited in the same account, that withdrawals therefrom were made for community as well as business expenditures and advances the contention that the evidence is

insufficient to establish that all of the separate funds were so deposited and used for the enhancement of the business. The trial court found that community expenses more than offset the community earnings of the plaintiff. The finding is amply supported by the evidence. ■ Where separate and community funds are commingled in a composite account, from which separate and community expenditures are made, there is a presumption that money used for community living expenses is drawn from community funds before there is an encroachment on funds which are the separate property of one of the spouses. (*Huber* v. *Huber*, 27 Cal.2d 784 [167 P.2d 708]; *Kenney* v. *Kenney*, 128 Cal.App.2d 128, 136 [274 P.2d 951]; *Thomasset* v. *Thomasset, supra*, 122 Cal.App.2d 116, 124.) ■ Community expenses may be shown by circumstantial evidence (*Cozzi* v. *Cozzi*, 81 Cal.App.2d 229, 232-233 [183 P.2d 739]). ■ Although, as defendant contends, the marriage relationship partakes of the nature of a partnership, the law does not require as much nicety or precision in an accounting between husband and wife at the time of a divorce as it demands in a dissolution of partnership proceeding. A man and woman ordinarily do not enter into the marital relationship for the same purposes and in the same spirit as do two persons forming a partnership to be operated for their mutual financial profit.

■ It is true that plaintiff did not offer a formal accounting of all sums expended for the maintenance of his family during the long period of marriage but the record is replete with evidence relating to the manner in which they lived. Two daughters were raised to adulthood. One daughter had expensive dental bills; on one occasion the bill was $2,000. One daughter attended Stephens College in Missouri. The family traveled extensively to Canada, Europe, Yellowstone National Park and Glacier National Park. Until 1952 a summer mountain home was maintained; after 1952 a beach home was maintained at Cambria Pines. The family home in Bakersfield was furnished and maintained. They owned two, and sometimes three, cars; employed a salaried gardener; and purchased four parcels of real property which at the time of commencement of suit had a total cost value of $34,-250. Plaintiff testified that during the entire marriage community expenses and purchases exceeded his earnings from the business. Income tax returns introduced in evidence established that net business income for the entire period of the marriage was approximately $250,000 or approximately $10,-

500 per year before taxes. The finding of the trial court is supported by substantial evidence. █ As was said in *Estate of Ades,* 81 Cal.App.2d 334, 339 [184 P.2d 1]:

"Evidence that there was no excess of community income over living expenses is as effective to prove that all assets of the estate are separate property as a specific showing from which separate source each asset flowed."

Defendant complains because the court did not specifically find the amount attributable to the husband's earnings and the amount expended for community living expenses. █ The case of *Thomasset* v. *Thomasset, supra,* 122 Cal. App.2d 116, at page 129, furnishes a complete answer:

"The findings generally dispose of all the issues made by the pleadings. General findings in the words of the pleadings are a sufficient compliance with the requirement of making findings of facts. [Citations.] █ A finding that certain property owned by a married person is separate or community is a finding of an ultimate fact. [Citations.] The evidence from which this ultimate fact is determined need not be found by the court." █ Here the findings were directed to the ultimate facts as alleged in the pleadings and the trial court was not required to make specific findings of the evidentiary facts upon which the ultimate facts were predicated. (*Tassi* v. *Tassi,* 160 Cal.App.2d 680, 692 [325 P.2d 872].)

█ Defendant's remaining arguments on this point run to the weight to be accorded the evidence. It is argued that federal and state income tax returns, some joint and some separate but splitting all income, whether community or separate, compel a finding of transmutation. The filing of such returns does not establish transmutation as a matter of law but creates a disputable presumption which may be overcome by evidence to the contrary (*Estate of Neilson,* 57 Cal.2d 733, 745 [22 Cal.Rptr. 1, 371 P.2d 745]; *Estate of Ney,* 212 Cal. App.2d 891, 897 [28 Cal.Rptr. 442]). █ The fact that defendant joined with plaintiff in signing the note evidencing the construction loan, the proceeds of which were used for the improvement of the business realty, does not require a finding, as a matter of law, that the funds obtained thereby were communtiy property (*Hicks* v. *Hicks,* 211 Cal.App.2d 144, 160-161 [27 Cal.Rptr. 307]; *Stewart* v. *Stewart,* 113 Cal.App. 334, 337 [298 P. 83].) █ In letters written by plaintiff to defendant, plans for liquidation of the business and other assets looking to reinvestment of the proceeds and retirement are mentioned. The words "we" and "our" are used in

reference to the business assets. Plaintiff's testimony with reference thereto is sufficient to overcome any inference raised by the language contained in the letters that he intended thereby to make a gift of any of his separate property to defendant. We are not required to here summarize such evidence (*Estate of Arstein, supra,* 56 Cal.2d 239, 241). It is for the trial court to determine whether a presumption or inference has been overcome by preponderating evidence (*Thomasset* v. *Thomasset, supra,* 122 Cal.App.2d 116, 123).

### Order Denying Costs

Defendant lastly contends that it was error to deny her costs of suit. ▮ Discretion to grant or refuse a request for counsel fees and costs is vested in the trial court (Civ. Code, § 137.3; *Leupe* v. *Leupe,* 21 Cal.2d 145, 152 [130 P.2d 697]). Abuse of discretion is never presumed but must be affirmatively established in order to justify interference by an appellate court. (*Wilder* v. *Wilder,* 214 Cal. 783, 785 [7 P.2d 1032]; *Howard* v. *Howard,* 128 Cal.App.2d 188, 190 [275 P.2d 93].) ▮ Defendant is not impecunious. At the time of trial she had in excess of $4,000 in a bank account and owned interests in real and personal property of a value in excess of $15,000. Plaintiff was directed to pay $1,000 on account of her attorney's fees. The record fully supports the trial court's determination that defendant is well able to pay her own costs. There is no showing of an abuse of discretion in this respect.

As is typical in divorce cases, conflicts as to probative facts and the inferences to be drawn therefrom appear in the record of this case. ▮ But it is not the function of an appellate court to reweigh and reassess the evidence, redetermine findings, or resolve conflicts (*Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557]); nor is this court vested with discretion so to do. Our task is completed where, as here, we find *any* substantial evidence to support the ultimate findings of the trial court.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied June 28, 1963, and appellant's petition for a hearing by the Supreme Court was denied July 31, 1963.