[Civ. No. 27186. Second Dist., Div. Four. Sept. 6, 1963.]

MABEL PEARL OWENS, Plaintiff and Appellant, v. VERN OWENS, Defendant and Respondent.

Shacknove & Goldman and Ben F. Goldman, Jr., for Plaintiff and Appellant.

William T. Selby for Defendant and Respondent.

JEFFERSON, J.—This is an appeal by the plaintiff, Mabel Pearl Owens, from that portion of the judgment, in an action for divorce, finding that the stock in O. C. O. Tool Company, Inc., was wholly the separate property of the husband and not community property.

Plaintiff and defendant were married in 1947 and lived together for approximately thirteen and a quarter years before this action for divorce was filed in 1961. This was the second marriage for both parties. Prior to marriage, defendant was the owner-manager of a business known as O. C. O. Tool Company. On the day before the marriage, defendant transferred his individual ownership in the O. C. O. Tool Company to the then newly formed O. C. O. Tool Company, Inc. In return, defendant received 94 per cent of the stock in the corporation, which had a book valuation of approximately $42,000. During the entire life of the marriage defendant was president of the corporation, devoting his full time to its management and operation.

As compensation for his services defendant received an average salary of $14,461 per year, with $18,000 being paid in each of the last eight years of the marriage. During this time defendant also received one dividend of $5,000 which he commingled with community funds and spent for community purposes. In addition, defendant was given an entertainment allowance and the use of a company automobile.

During the marriage the O. C. O. Tool Company, Inc. purchased certain real property for investment and to provide income. It also purchased equipment and replacements for the operation of the business with the proceeds of loans entered into with the Bank of America. These loans were obtained in the name of the corporation. However, defendant personally guaranteed them. At the time of the hearing, in April of 1962, the corporation had an estimated value of $174,000 (exclusive of any increment for the good will of the corporation), and with the defendant still owning 94 per cent of the stock.

On appeal plaintiff contends that the portion of Finding 3, hereinafter quoted, is unsupported by the evidence:

"The defendant, VERN OWENS, is the owner, as his separate, personal property, of the stock of O. C. O. TOOL COMPANY, which stands in his name. All of the said stock was held by him before the marriage of the parties, the increase in the value of the stock is ascribed to a reasonable return upon the separate property of the defendant, invested by him before the marriage, and to the faithful, loyal, and effective service of other employees of the corporation and to the inflation which has occurred during the period of the marriage of the parties. The community has received adequate and fair compensation, through the payment of salary

by that corporation to the defendant, and the amounts thus paid are reflected in the property held as community by the parties.''

Plaintiff claims that since the increase in the value of the business was due to the husband's labor, skill and management, some part of that increase must be allocated to the community. (See *Price* v. *Price,* 217 Cal.App.2d 1, 6 [31 Cal.Rptr. 350]; *Estate of Gold,* 170 Cal. 621 [151 P. 12]; *Pereira* v. *Pereira,* 156 Cal. 1 [103 P. 488, 134 Am. St. Rep. 107, 23 L.R.A. N.S. 880]; *Haldeman* v. *Haldeman,* 202 Cal. App.2d 498 [21 Cal.Rptr. 75].) However, ''It has frequently been held that a proper method of making such allocation is to deduct from the total earnings of the business the value of the husband's services to it. The remainder, if any, represents the earnings attributable to the separate property invested in the business.'' (*Gilmore* v. *Gilmore,* 45 Cal.2d 142, at pp. 149-150 [287 P.2d 769].) This formula has been followed in a number of cases, *Harrold* v. *Harrold,* 43 Cal.2d 77, 80 [271 P.2d 489]; *Tassi* v. *Tassi,* 160 Cal.App.2d 680, 690 [325 P.2d 872]; *Logan* v. *Forster,* 114 Cal.App.2d 587 [250 P.2d 730]; see also *Van Camp* v. *Van Camp,* 53 Cal.App. 17 [199 P. 885]), and was used by the trial court here. ▆ The court found that the salaries paid by the corporation to defendant for his services during the marriage were sufficient to fully compensate both defendant and the community. Since the evidence adequately supports such a finding, it cannot be disturbed on appeal. (*Gilmore* v. *Gilmore, supra,* 45 Cal.2d 142, 151; *Gudelj* v. *Gudelj,* 41 Cal.2d 202, 211 [259 P.2d 656].)

▆ Plaintiff further contends that since the husband signed the corporate notes as guarantor, community credit was thus pledged, and any acquisition such as real property and equipment resulting from such credit is a community asset. (*Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202, 210.) Plaintiff, however, overlooks that the loans were made to the corporation and not to defendant. It was the corporation and not the defendant which paid off the loans. The security provided by the corporation was ample to cover the loans. We believe that the evidence presented adequately supports the finding of the trial court that these acquisitions are the property of the corporation and not a community asset.

Plaintiff's contention that the court erred in not evaluating the good will of the corporation is untenable. ▆ Since the trial court found upon substantial evidence that the stock in the corporation was defendant's separate property, no

evaluation of the corporate good will was necessary to properly allocate the community property.

The judgment is affirmed.

Burke, P.J., and Kingsley, J., concurred.